UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL  'O'

| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
|---|---|---|---|
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Khai LeQuang

David Gomez

Attorneys Present for Defendants:

Hutson Smelley

**Proceedings:** DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (Dkt. [ 42 ], filed September 25, 2019)

## I. INTRODUCTION AND BACKGROUND

The Court previously set out the factual and procedural background of this case in its August 28, 2019 order. Accordingly, the Court only recites the background that gives rise to the present motion to dismiss.

Plaintiffs Brighton Trustees, LLC ("Brighton"), Cook Street Master Trust ("Cook Street"), Diamond LS Trust ("Diamond LS"), and Bank of Utah filed this action against defendant Transamerica Life Insurance Company ("Transamerica") on May 15, 2019. Dkt. 1. On June 10, 2019, Brighton, Cook Street, Diamond LS, Bank of Utah, and additional plaintiffs, Cook Street Master Trust III and Wilmington Trust, National Association, filed a first amended complaint against Transamerica. Dkt. 14 ("FAC"). The FAC asserts claims for: (1) breach of contract; (2) contractual breach of the implied covenant of good faith and fair dealing; (3) tortious breach of the implied covenant of good faith and fair dealing; and (4) declaratory relief. Id.

Transamerica moved to dismiss the FAC on July 10, 2019. Dkt. 28. On August 28, 2019, the Court granted, in part, and denied, in part, Transamerica's motion to dismiss. Dkt. 37. The Court denied Transamerica's motion to dismiss for lack of personal jurisdiction and for lack of standing. Id. The Court dismissed, without prejudice,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

plaintiffs' express breach of contract claim to the extent that it relied on an allegation that Transamerica breached plaintiffs' policies "by increasing the Monthly Deduction Rates in an attempt to circumvent the guaranteed minimum interest rate." Id. at 16 (internal punctuation omitted) (citing FAC ¶ 76(b)). The Court also dismissed, without prejudice, plaintiffs' claim for tortious breach of the implied covenant. Dkt. 37 at 21–23. The Court first noted that plaintiffs' claims were premised on allegations that "Transamerica's MDR increases deprived policyholders and owners [of] benefits in the form of the Accumulation Value and monthly accrual of guaranteed interest." Id. at 22. The Court concluded that Transamerica's deprivation of these benefits relates to the *savings* component of Transamerica's universal life insurance policies, rather than the *insurance* component, and therefore "do[es] not implicate the 'special relationship' between insureds and insurer that animate[s] the narrow exception providing a tort claim in the insurance context." Id. (citing EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co., 309 F. Supp. 3d 89, 96 (S.D.N.Y. 2018)). To the extent that plaintiffs' claim for tortious breach of the implied covenant depended on allegations that "Transamerica breached the policies' terms when increasing the MDRs and that Transamerica increased the MDRs to cause policy lapses or surrenders before death benefits became due," the Court distinguished the plaintiffs in this case from the elderly insured plaintiffs to whom the Court extended the tort remedy in another case, Thompson v. Transamerica Life Ins. Co., No. 2:18-cv-05422-CAS-GJS, 2018 WL 6790561, (C.D. Cal. Dec. 26, 2018). Dkt. 37 at 23.

On September 11, 2019, Brighton Trustees, Cook Street Master Trust, Diamond LS Trust, and Bank of Utah (collectively, "plaintiffs") filed the operative second amended complaint against Transamerica.[1] Dkt. 40 ("SAC"). The SAC asserts claims against Transamerica for: (1) breach of contract; (2) contractual breach of the implied covenant of good faith and fair dealing; (3) tortious breach of the implied covenant of good faith and fair dealing; (4) conversion; and (5) declaratory relief. Id.

Transamerica moved to dismiss the SAC on September 25, 2019. Dkt. 42-1 ("Mot."). Plaintiffs filed an opposition on October 11, 2019. Dkt. 43 ("Opp."). Transamerica filed a reply on October 21, 2019. Dkt. 44 ("Reply").

---

[1] Wilmington Trust, National Association and Cook Street Master Trust III voluntarily dismissed their claims against Transamerica without prejudice on September 6, 2019. Dkt. 38.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

The Court held a hearing on November 4, 2019. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL 'O'

| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
|---|---|---|---|
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. DISCUSSION

### A. Breach of Contract Claim

Plaintiffs allege that Transamerica breached plaintiffs' policies in four material respects. See SAC ¶ 84(a)–(d). Transamerica moves to dismiss, in part, plaintiffs' breach of contract claim to the extent it is premised on plaintiffs' allegation that Transamerica breached plaintiffs' policies "[b]y increasing the Monthly Deduction Rates in an attempt to circumvent the guaranteed minimum interest rate[.]" Mot. at 6; SAC ¶ 84(b).

The Court previously dismissed plaintiffs' breach of contract claim to the extent that the claim was premised on an identical allegation in the FAC. Dkt. 37 at 16. Here, the SAC alleges that "any change in the Monthly Deduction Rates must be based on changes to Transamerica's expectations as to future cost factors, such as mortality, expenses, *interest*, persistency, and . . . taxes." SAC ¶ 13 (emphasis added). The two representative policies that plaintiffs attach to the SAC also include language expressly permitting Transamerica to consider "interest" when setting MDRs. See Dkt. 40-2, Exhibit 2 ("Diamond Doe Policy") at 58 ("Any Change in the Monthly Deduction Rates will be prospective and will be subject to our expectations as to future cost factors. Such cost factors may include, but are not limited to: mortality; expenses; *interest*; persistency; and any applicable federal, state and local taxes.") (emphasis added); Dkt 40-4, Exhibit 4 ("Cook Street Doe Policy") at 95 (same). As the Court indicated in its previous order dismissing this claim, the Court has already determined, in other cases involving Transamerica's MDR increases, that this contractual language cannot give rise to a breach of contract claim because the language provides that Transamerica *can* consider its interest obligations while setting MDRs. See Dkt. 37 at 16–17; Thompson, 2018 WL 6790561, at *8 (finding that plaintiff "has failed to state a claim for liability [for breach of contract] based upon Transamerica's alleged considerations of its interest obligations in setting an MDR."); accord EFG Bank AG, Cayman Branch v. Transamerica Life Ins. Co., No. 2:16-cv-08104-CAS-AJW, 2017 WL 3017596, at *7 (C.D. Cal. July 10, 2017); Feller v. Transamerica Life Ins. Co., No. 2:16-cv-01378- CAS-AJW, 2016 WL 6602561, at *10 (C.D. Cal. Nov. 8, 2016). At least one other court has reached the same conclusion. LSH

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

CO v. Transamerica Life Ins. Co., No. 2:18-cv-09711-SJO-KS, 2019 WL 3064422, at *8 (C.D. Cal. Mar. 20, 2019) (finding that policy owners could not state claim for breach of contract against Transamerica based on Transamerica's alleged consideration of interest in setting MDRs because the policies "are not reasonably susceptible to [the policy owners'] interpretation of the term 'interest'[.]").

Plaintiffs concede they have not included any additional allegations in the SAC in support of this claim that differ from those in the FAC. See Opp. at 3 n.1 ("Plaintiffs re-alleged their claim that Transamerica breached the express terms of the Policies by increasing MDRs in an attempt to circumvent the guaranteed minimum interest rate to preserve the claim for appeal."). Accordingly, the Court **DISMISSES** plaintiffs' breach of contract claim, as alleged in ¶ 84(b), of the SAC **with prejudice.**

### B. Tortious Breach of the Implied Covenant Claim

Plaintiffs assert that, with respect to its policies that Transamerica originally issued in California, Transamerica tortiously breached the implied covenant of good faith and fair dealing. SAC ¶ 97. Plaintiffs allege that Transamerica breached the implied covenant in several respects, including by: (1) "charging excessive Monthly Deduction Rates, thereby denying [p]laintiffs the benefit of their actual policy Accumulation Values"; (2) "increasing the Monthly Deduction Rates to circumvent the guaranteed minimum interest rate" under the policies; and (3) "attempting to force [plaintiffs] and other policyholders either to (i) pay exorbitant premiums that Transamerica knows would no longer justify the ultimate death benefits or (ii) lapse or surrender their policies, thereby forfeiting the premiums they have paid to date[.]" Id. ¶ 97 (a)(e)(f). The Court addresses these allegations in turn.

#### 1. Accumulation Values and Accrued Interest

The Court previously dismissed plaintiffs' claim for tortious breach of the implied covenant to the extent the claim depended on allegations that Transamerica has withheld the benefits of the value of plaintiffs' accumulation accounts and the guaranteed monthly accrual of interest on those accounts. Dkt. 37 at 21–23. In doing so, the Court determined that these benefits arose under the *savings* component of Transamerica's universal life insurance policies rather than the *insurance* component. Id.

Plaintiffs contend that the SAC includes additional allegations that clarify that "the Accumulation Value is an insurance benefit under the policies." Opp. at 10. The SAC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

alleges that "universal life insurance includes (a) the 'mortality' component, for which the insurance company charges a cost to cover the risk of the insured's death ('the cost of insurance'); and (b) a 'cash value' component, where premiums paid in the excess of the cost of insurance (and certain other policy charges) accumulate . . . and earn interest at a rate that will not be lower than a 'guaranteed minimum interest rate[.]'" SAC ¶ 8. According to plaintiffs, Transamerica uses this "Accumulation Value . . . to fund the policy charges, including the cost of insurance charges, and *it makes up part of the death benefit*. In other words, the *Accumulation Value is part of the coverage of the life insurance policy*: it is paid out only upon the death of the insured[.]" Id. (emphases added).

The California Supreme Court has held that "it is wise to proceed with caution in determining the[] scope and application" of the tort remedy in the context of a claim for breach of the implied covenant of good faith and fair dealing. Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85, 92 (1995). Accordingly, there is a "a general rule precluding tort recovery for noninsurance contract breach[.]" Id. at 102. In construing the outer limits of the tort remedy in this context, the California Supreme Court has further concluded that "the benefits of the insurance policy" are the "security against losses and third party liability." Jonathan Neil & Assoc., Inc. v. Jones, 33 Cal. 4th 917, 939 (2004). Thus, the majority of cases applying the tort remedy in the insurance context involve allegations of denial of insurance policy proceeds or mishandling of insurance claims. See, e.g., Brizuela v. CalFarm Ins. Co., 116 Cal. App. 4th 578, 592 (2004) ("The gravamen of a claim for breach of the covenant of good faith and fair dealing, which sounds in both contract and tort, is the insurer's refusal, without proper cause, to compensate the insured for a loss covered by the policy."); Jonathan Neil, 33 Cal. 4th at 940 (noting that allegations that "the overcharging of premiums was inextricably linked to the mishandling of claims . . . [is] precisely the kind of bad faith behavior that goes to the heart of the special insurance relationship and gives rise to tort remedies.").

Here, the SAC alleges that "the Accumulation Value is deducted from the death benefit because, although the Accumulation Value is part of the death benefit paid upon the insured's death, policyholders do not pay cost of insurance on the Accumulation Value, *which is the savings component* of the Policies and *not the 'insurance.'*" SAC ¶ 47 (emphases added). Accordingly, the Court concludes that, to the extent plaintiffs' tortious breach claim depends on allegations that Transamerica has withheld plaintiffs' accumulation values and related accrual of interest, plaintiffs' claim "arise[s] less from the relationship between [plaintiffs] as insureds and [Transamerica] as insurer than [it] do[es]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

from the relationship between [plaintiffs] and [Transamerica] as a bank (or similar financial institution)." EFG Bank, 309 F. Supp. 3d at 96. That plaintiffs allege that Transamerica charged excessive MDRs in an attempt to minimize plaintiffs' Accumulation Value and accrual of interest does not transform the Accumulation Value or related interest into insurance benefits.[2] See Cal. Ins. Code § 22 ("Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event."); Jonathan Neil, 33 Cal. 4th at 939 (finding that insurer's practice of knowingly and retroactively charging insured higher premiums than were actually owed did not give rise to tortious breach claim in part because "the billing dispute does not . . . deny the insured the *benefits of the insurance policy*—the security against losses and third party liability.").

In support of their argument that the Accumulation Value and accrued interest arise from the insurance component of Transamerica's policies, rather than the savings component, plaintiffs further allege that "interest earned on the Accumulation Value is tax-deferred because the Accumulation Value is considered part of the insurance." SAC ¶ 10. The Court does not find this argument persuasive. First, plaintiffs do not provide any authority for this proposition. Moreover, the classification of an item as "insurance" for the purposes of California's Insurance Code is not even determinative of whether the item is "insurance" for the purposes of a tortious breach claim. See Cates Constr., Inc. v. Talbot Partners, 21 Cal. 4th 28, 52 (1999) (declining to extend tort remedy to purported denial of

---

[2]  Plaintiffs rely on Notrica v. State Comp. Ins. Fund and Security Officers Serv., Inc. for the proposition that "because the value of the death benefit under a life insurance policy is tied directly to the cost of insurance, raising the cost of insurance diminishes, if not destroys, this benefit." Opp. at 9–10. These cases are distinguishable, however, because both included allegations that insurers were engaged in the intentional mishandling of claims. See Notrica v. State Comp. Ins. Fund, 70 Cal. App. 4th 911, 918 (1999) (insurer "sued his workers' compensation insurer . . . to recover in tort . . . based on allegations relating to [insurer]'s case reserve and claims handling policies and practices."); Sec. Officers Serv., Inc. v. State Comp. Ins. Fund, 17 Cal. App. 4th 887, 892, 898 (1993) (finding that allegations that insurer deliberately "delayed resolution of claims" constituted "improprieties in claims handling" which gave rise to claim for tortious breach). To the contrary, plaintiffs do not allege that Transamerica deliberately manipulated its processes for managing insurance claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | | |
|---|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | | **'O'** |
| Case No. | 2:19-cv-04210-CAS(GJSx) | | Date | November 4, 2019 |
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | | |

benefits under surety contract because "[a]lthough suretyship is listed in the Insurance Code as a class of insurance, it does not follow that a surety bond equates to a policy of insurance under the common law or common law theories of liability."); see also In re Barr's Estate, 104 Cal. App. 2d 506, 511 (1951) ("The classification of annuities as life insurance for the purposes of the Insurance Code does not require its classification as insurance for the purposes of the Revenue and Taxation Code the objects of which are totally different."). The Court therefore concludes that the Internal Revenue Service's treatment of interest derived from the Accumulated Value is likewise not dispositive of whether the Accumulation Value, and interest accrued on that amount, are "insurance" that arise from the "insurance component" of Transamerica's policies.

For the foregoing reasons, the Court finds that plaintiffs fail to state a claim for tortious breach of the implied covenant based on allegations that Transamerica has withheld the benefits of the value of plaintiffs' accumulation accounts and the guaranteed monthly accrual of interest on those accounts.

### 2. Attempts to Cause Policy Lapses or Surrenders

Plaintiffs also allege that Transamerica tortiously breached the implied covenant of good faith and fair dealing by "attempting to force [plaintiffs] and other policyholders either to (i) pay exorbitant premiums that Transamerica knows would no longer justify the ultimate death benefits or (ii) lapse or surrender their policies, thereby forfeiting the premiums they have paid to date[.]" SAC ¶ 97(f). The Court previously dismissed this claim to the extent that it was based on similar allegations because "the FAC does not contain sufficient factual allegations regarding the nature and character of the plaintiffs in this case to justify extending the tort remedy in this context." Dkt. 37 at 23.

The California Court of Appeal has extended the tort claim in at least two cases involving allegations outside the context of benefits denial and claims mishandling. In Spindle v. Travelers Ins. Companies, the Court of Appeal held that the tort remedy "is applicable to subject an insurer to liability to its insured for cancelling a malpractice insurance policy in accordance with permissible terms of the cancellation provisions of the policy, if the reasons for such cancellation are such as to make the cancellation a violation of the implied covenant of good faith and fair dealing." 66 Cal. App. 3d 951, 959 (1977). In that case, a surgeon alleged that his insurer cancelled his malpractice insurance "to serve as an example to other [physicians] so they would agree to the greater premium increase sought by the defendant, the only insurer in a position to insure them." Id. at 955. In

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
|---|---|---|---|
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Helfand v. Nat'l Union Fire Ins. Co., the Court of Appeal similarly held that the tort remedy was available against an insurer who cancelled the insureds' policies in the final year of coverage, despite the insureds' prepaying of premiums. 10 Cal. App. 4th 869, 877 (1992). That is because plaintiffs alleged that the purpose of the cancellation "was to avoid paying $10 million in coverage on third year claims—coverage which the insureds bargained for and could reasonably expect to remain intact." Helfand, 10 Cal. App. 4th at 904.

The California Supreme Court subsequently addressed Spindle and Helfand in Jonathan Neil. 33 Cal. 4th at 941. The Court held that "[w]e have no occasion to decide whether Spindle was correctly decided or whether and when the cancellation of an insurance contract for improper motives could ever give rise to tort damages." Id. Citing Helfand, the Court left open the question of whether the cancellation of an insurance contract for improper motives could warrant extension of the tort remedy. See id. ("There may be circumstances in which cancellation of the policy denies the insured the benefits of the policy."). The Court concluded, however, that it need not resolve the question in determining whether an insured could maintain a tort claim against its insurer based on the insurer's practice of knowingly and retroactively charging the insured higher premiums than were actually owed. Id. That is because the plaintiffs "were not in the same vulnerable position as those who suffer from the insurer's bad faith claims and settlement practices— they were not denied the benefits of the insurance policy, were not required to prosecute the insurer to vindicate their contractual rights, and had available various administrative, contractual, and tort remedies." Id. Thus, "tort remedies for breach of the implied covenant . . . in this circumstance are unnecessary to protect the insured's interests[.]" Id.

Here, plaintiffs allege that they acquired their policies "through the secondary market (sometimes referred to generally as the 'life settlement' market)." SAC ¶ 39. They contend that "[b]efore the existence of a robust secondary market for life insurance, customers who owned a life insurance policy but no longer needed or wanted it (or could no longer afford it)—often a senior who had outlived her or his savings—had two economically inefficient options: (i) let the policy lapse and receive nothing in return for the termination of the policy; or (ii) surrender the policy back to the insurance company in exchange for a cash surrender value that was typically a nominal amount." Id. ¶ 41. Plaintiffs assert that "[t]he emergence of the secondary market . . . has addressed this market deficiency by providing consumers with a third, often superior option: they can sell (or 'settle') their policies to someone other than the insurance company. . . . This secondary market has benefitted consumers, particularly older age policyholders who no longer wish

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

to keep paying for life insurance, by providing a liquid market where they can sell their policies for fair value, as opposed to just lapsing or surrendering their policies to the insurance company that issued them and receiving nothing or very little in return[.]" SAC ¶ 42. This secondary market has allowed "[c]onsumers who would not otherwise buy life insurance [to] purchase insurance with the comfort they could later sell their policies for fair market value if they did not need or want to keep their policies." Id. ¶ 44. However, according to plaintiffs, Transamerica has now implemented MDR increases to force policyholders to pay exorbitant rates to avoid lapse or surrender, and "[i]f companies like Transamerica are not deterred from executing such a strategy, they will cripple—if not ultimately destroy—the secondary market because secondary market purchasers will not want to incur the risks of such unlawful rate increases." Id. ¶ 45. This will "harm[] consumers, particularly older aged insureds, because it will have a chilling effect on the secondary market for life insurance and deprive elderly insureds of the option to sell their policies rather than lapse or surrender them." Id. ¶ 99.

These additional allegations, however, fall outside the confines of cases recognizing a claim for breach of the implied covenant sounding in tort. The SAC does not allege, for example, that Transamerica has engaged in the denial of benefits or the mishandling of insurance claims. And, unlike in Spindle and Helfand, plaintiffs do not allege that Transamerica *cancelled* their policies. See, e.g., U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co., No. 2:11-cv-09517-ODW-RZ, 2012 WL 1525012, at *3 (C.D. Cal. Apr. 26, 2012) ("Spindle was concerned with good faith in connection with a policy's *cancellation* and does not apply in premium increase situations.") (emphasis added).

Nor do policy considerations warrant extending the tort claim to plaintiffs in their own right. In declining to extend the tort claim outside the context of denial of benefits, claims mishandling, and policy cancellation, the California Supreme Court has considered factors such as: (1) the ability of marketplace competition to discipline the insurer's alleged misconduct; (2) whether the alleged misconduct denies the insured the benefits of the insurance policy, namely the security against losses and third party liability; (3) whether the alleged misconduct required the insureds to prosecute the insurer in order to enforce its rights; and (4) the availability of other administrative, contractual, and tort remedies. Jonathan Neil, 33 Cal. 4th at 940–41. Consideration of these factors here does not justify extending the tort claim to plaintiffs in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

For example, tort recovery is considered appropriate in the insurance context because "[i]n general, insurance policies are not purchased for profit or advantage; rather, they are obtained for peace of mind and security in in the event of an accident or other catastrophe." Cates, 21 Cal. 4th at 44. Here, however, plaintiffs are investors who purchase policies from insureds "for a value greater than the policy's cash surrender value, but less than its death benefit" but "receive[] the death benefit upon the death of the insured." SAC ¶ 39; see also EFG Bank, 309 F. Supp. 3d at 96 (declining to extend tort claim to institutional investors because "[p]laintiffs are not even the original insureds, but rather sophisticated entities that indisputably purchased the policies for investment purposes."). Similarly, tort recovery is appropriate to deter misconduct on the part of insurers because "the insured cannot turn to the marketplace to find another insurance company willing to pay for the loss already incurred." Foley v. Interactive Data Corp., 47 Cal. 3d 654, 692 (1988); see also Thompson, 2018 WL 6790561, at *11 ("extending the tort remedy to this context is justified to deter insurers from unreasonably increasing premiums to induce early surrender or lapses of life insurance policies held by people who cannot turn to the market and obtain another policy due to the advanced age of the insureds."). That is not the case here, where plaintiffs participate in the secondary market which exists because "[t]he buyer, often a bank, insurance company, or pension funds seek[] investments uncorrelated to the traditional equity and debt capital markets[.]" SAC ¶ 42; see also EFG Bank, 309 F. Supp. 3d at 96–97 (declining to extend tort remedy to institutional investors because "they *can* turn to the marketplace and invest their money elsewhere.") (emphasis in original). Moreover, the Court has already determined that plaintiffs have stated claims for breach of contract and breach of the implied covenant sounding in contract—therefore, this is not a case where plaintiffs have no other "available various administrative contractual, and tort remedies." Jonathan Neil, 33 Cal. 4th at 941.

Plaintiffs alternatively argue that they "are entitled to the same rights and remedies as any policyholder, including the right to bring a claim for insurer bad faith based on the same bad faith conduct that impacted other policyholders, such as the plaintiffs and putative class in Thompson." Opp. at 12. Put differently, plaintiffs contend that, even if the nature and character of the plaintiffs in this case differs from those in Thompson, where the Court previously extended the tort claim to a putative class of elderly insureds, plaintiffs in this case are nonetheless entitled to assert a claim for tortious breach (and recover the corresponding remedies) based on the same alleged misconduct that the Court determined gave rise to a claim for tortious breach in Thompson. That is because, according to plaintiffs, an insurance contract is assignable and it is therefore immaterial whether the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
|---|---|---|---|
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

party seeking to recover in tort is the original insured or an assignee, like plaintiffs, since "there is no reason to conclude that . . . the corresponding remedies do not also transfer with the rights in the policies." Opp. at 13. The Court disagrees.

The cases on which plaintiffs rely do not compel a different result. For example, in Brandt v. Superior Court, the California Supreme Court held that "[w]hen an insurer tortiously withholds benefits, . . . attorney's fees, reasonably incurred to compel payment of the policy benefits, [are] recoverable as an element of the damages resulting from such tortious conduct[.]" 37 Cal. 3d 813, 815 (1985). In Essex Ins. Co. v. Five Star Dye House, Inc., the California Supreme Court subsequently held that these attorneys' fees, "now commonly referred to as Brandt fees," are assignable such that when an insured assigns a claim for bad faith against the insurer, and the assignee brings a tort claim against the insurer for wrongfully *withholding benefits* due under the policy, the assignee may recover attorneys' fees incurred in recovering the benefits originally due to the insured. 38 Cal. 4th 1252, 1256 (2006). The Court held that "[a]lthough some damages potentially recoverable in a bad faith action, including damages for emotional distress and punitive damages, are not assignable, *the cause of action itself remains freely assignable* as to all other damages." Id. at 1263 (emphasis added) (internal citations omitted).

These cases, including Essex, do *not* support plaintiffs' contention that "[i]f a claim for tortious bad faith is assignable, there is no reason to conclude that the right itself . . . and the *corresponding remedies* do not also transfer with the rights in the policies." Opp. at 13 (emphasis added). To the contrary, Essex explicitly acknowledged that a tort claim for bad faith against the insurer is "comprised of both assignable and nonassignable components" and that emotional distress damages and punitive damages are *not* assignable. 38 Cal. 4th 1263; accord Murphy v. Allstate Ins. Co., 17 Cal. 3d 937, 940–42 (1976) (noting that "[t]he insured may assign his cause of action for breach of the duty to settle without consent of the insurance carrier," but holding that "part of the damage arises from the *personal tort aspect* of the bad faith cause of action. And because a purely personal tort cause of action is not assignable in California, it must be concluded that damage for *emotional distress* is *not assignable*. The *same is true* of a claim *for punitive damage*.") (emphases added) (internal citations omitted).

Importantly, Essex involved allegations that an insurer refused to defend its insured and therefore fell within the well-established line of cases permitting a claim for tortious breach in instances of an insurer's withholding of benefits. Therefore, Essex stands only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

for the proposition that, within the confines of *these* well-established cases, where courts have previously recognized a tort claim exists, the already-cognizable "cause of action" for tortious breach remains assignable even though some of the damages available are not. Essex does not, however, say whether, *in the first instance*, California law recognizes a tort claim where, as here, the allegations fall outside the denial of benefits or claims mishandling contexts. Instead, the proper inquiry requires the Court to "apply California law as [the Court] believes the California Supreme Court would apply it." Rex v. Chase Home Fin. LLC, 905 F. Supp. 2d 1111, 1156 (C.D. Cal. 2012) (citing In re KF Dairies, Inc. & Affiliates, 224 F.3d 922, 924 (9th Cir.2000)) (internal punctuation omitted). And, based on the factors that the California Supreme Court considered in Jonathan Neil in previously declining to extend the tort claim outside the contexts of denial of benefits or mishandling of claims, the Court concludes that the California Supreme Court would not extend the tort claim to the plaintiffs in this case.

For the foregoing reasons, the Court therefore finds that plaintiffs fail to state a claim for tortious breach of the implied covenant of good faith and fair dealing. Accordingly, the Court **DISMISSES** plaintiffs' claim for tortious breach in its entirety **with prejudice.**

### C. Conversion Claim

Plaintiffs also assert a claim for conversion against Transamerica. SAC ¶¶ 102–06. The gravamen of plaintiffs' claim is that "Transamerica committed conversion by deducting funds from [plaintiffs'] Accumulation Values without . . . permission." Opp. at 7. California law recognizes "the tort of conversion . . . as the wrongful exercise of dominion over personal property of another." Voris v. Lampert, 7 Cal. 5th 1141, 1150 (2019) (internal citation and quotation mark omitted). To establish a claim for conversion, a plaintiff must establish the following elements: "(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages." Id. (internal citations and quotation marks omitted). The Court addresses each element in turn.

#### 1. Property Right

Plaintiffs assert that they "had a property interest in the funds Transamerica deducted from their Accumulation Values in excess of the amounts permitted by the terms of the Policies due to Transamerica's wrongful increases in Monthly Deduction Rates." SAC ¶ 102. Transamerica asserts that plaintiffs cannot establish the requisite property rights

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
|---|---|---|---|
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

needed to state a claim for conversion because: (1) plaintiffs "are essentially suing for the conversion of contract rights . . . not personal property subject to conversion"; and (2) plaintiffs "cannot dispute the requirement that they be entitled to immediate possession of the allegedly converted funds at the time of conversion." Mot. at 11; Reply at 13.

The California Supreme Court recently clarified the scope of the tort of conversion in Voris, 7 Cal. 5th 1141. In that case, a terminated employee successfully brought suit against his former employers for nonpayment of wages. Id. at 1144. After obtaining a judgment against his employers, the employee was unable to collect on the judgments. Id. at 1146. He thereafter brought suit against one of the employers, asserting that the employer had committed conversion of the employee's earned but unpaid wages. Id. In tracing the history of the tort, the Court noted that in the context of claims of conversion of money, while "each coin [nor] bill [need not] be earmarked . . . money cannot be the subject of an action for conversion *unless a specific sum capable of identification* is involved." Id. at 1151 (emphasis added) (internal citation and quotation marks omitted). Thus, courts have properly rejected claims for conversion "where the plaintiff could not identify [a] specific sum but only approximate monetary losses[.]" Id. (internal citation omitted). The Court determined that "[u]nlike the cases involving failure to turn over commissions, for example, which were *earmarked for a specific person* before being misappropriated and *absorbed into another's coffers*, a claim for unpaid wages simply seeks the satisfaction of a monetary claim against the employer, without regard to the provenance of the monies at issue." Id. at 1156 (emphases added).

Several days after the California Supreme Court issued its opinion in Voris, another district court within the Ninth Circuit decided Bally v. State Farm Life Ins. Co., No. 18-cv-04954-CRB, 2019 WL 3891149 (N.D. Cal. Aug. 19, 2019) ("State Farm"). There, a class of consumers brought suit against State Farm, alleging that State Farm violated the terms of its flexible premium adjustable life insurance policies by considering factors, other than those listed in the policies, in setting its MDRs. Id. at *1. The consumers asserted claims for breach of contract, conversion, and declaratory and injunctive relief. Id. at *2. The court denied State Farm's motion for summary judgment on the consumers' conversion claim. Id. at *4. State Farm argued that the consumers "cannot state a cause of action for conversion because, under California law, a conversion claim may not be based on an overcharge." Id. In response, the consumers contended that their "claim is not that [they] w[ere] overcharged, but rather that State Farm transferred funds that it should not have, because the account value belonged to the policyholder, and so when State

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Farm transferred funds without authorization, that constituted conversion." Id. (internal citations omitted). The court rejected State Farm's arguments, noting that the consumers' "claim—that State Farm took property that belonged to [consumers]—is distinct from a claim that . . . a defendant was simply overcharging for its services."[3] State Farm, 2019 WL 3891149, at *4 (internal citations and punctuation omitted).

The court's opinion in State Farm does not address the California Supreme Court's opinion in Voris. Instead, the court's opinion appears to focus on the question of whether State Farm's taking of funds from the consumers' accumulation values, in an amount based on consideration of factors other than those enumerated in the consumers' policies, was an "overcharge" or instead a transfer of funds without authorization, because "an unauthorized transfer of funds is sufficient to constitute *disposal of a plaintiff's funds in a manner inconsistent with the plaintiff's rights.*" State Farm, 2019 WL 3891149, at *4 (emphasis added) (citing ESG Capital Partners, LP v. Stratos, 828 F.3d 1023, 1038 (9th Cir. 2016)). In other words, the court's opinion does not appear to address the first element for conversion and whether funds associated with accumulation values, in the context of universal life insurance policies, is a "'specific thing' . . . to which the plaintiff has a right of ownership or possession[.]" Voris, 7 Cal. 5th at 1151.

Here, Transamerica first contends that [i]f the Monthly Deductions were too high as [plaintiffs] allege, they can sue for that overcharge as a breach of contract, but it is not conversion[.]" Mot. at 12. It cites Gutierrez v. Wells Fargo & Co., in support of its

---

[3] The court's opinion in State Farm does not address the California Supreme Court's opinion in Voris. Instead, the court's opinion appears to focus on the question of whether State Farm's taking of funds from the consumers' accumulation values, in an amount based on consideration of factors other than those enumerated in the consumers' policies, was an "overcharge" or instead a transfer of funds without authorization, because "an unauthorized transfer of funds is sufficient to constitute *disposal of a plaintiff's funds in a manner inconsistent with the plaintiff's rights.*" State Farm, 2019 WL 3891149, at *4 (emphasis added) (citing ESG Capital Partners, LP v. Stratos, 828 F.3d 1023, 1038 (9th Cir. 2016)). In other words, the court's opinion does not appear to address the first element of conversion and whether funds associated with accumulation values, in the context of universal life insurance policies, constitute a "'specific thing' . . . to which the plaintiff has a right of ownership or possession[.]" Voris, 7 Cal. 5th at 1151.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL    'O'

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

argument. 622 F. Supp. 2d 946 (N.D. Cal. 2009). In that case, consumers challenged a bank's alleged practice of "post[ing] items after they finally settle in a sequence that will maximize overdraft and thereby penalize customers the most" so as to be able to assess multiple "overdraft charges when only a single overdraft had actually occurred." Gutierrez, 622 F. Supp. at 950. The court granted summary judgment to the bank on the consumers' claims for conversion because "plaintiffs cite no California authority to support the proposition that a conversion claim may be based on an overcharge." Id. at 956. The court determined that the consumers' claims necessarily failed because they had no property interests in the funds they deposited with the bank because "when funds are deposited, title to those funds passes immediately to the bank. Since the money thus becomes the literal property of the bank, it cannot be tortiously converted by the bank." Id. (citing Crocker–Citizens Nat'l Bank v. Control Metals Corp., 566 F.2d 631, 637–38 (9th Cir.1978)).

The Court does not find persuasive Transamerica's argument that plaintiff's conversion claim is based on an overcharge theory. The SAC does not allege that plaintiffs transferred title to their Accumulation Values to Transamerica. To the contrary, plaintiffs allege that they "had a property interest in the funds Transamerica deducted from their Accumulation Values"; that "specific funds [were] placed in the custody of Transamerica for the benefit of Plaintiffs"; that "Transamerica continues to retain these funds unlawfully"; and that "[a]t no time did [plaintiffs] consent to such wrongful deduction and retention of funds by Transamerica." SAC ¶¶ 102–04. This is therefore not a case where, like the relationship between a bank and depositor, the relationship between plaintiffs and Transamerica "is that of a debtor and creditor." Gutierrez, 622 F. Supp. 2d at 956. Instead, plaintiffs expressly allege that these funds are *their* "personal property[.]" SAC ¶ 105. Moreover, Transamerica's assertion that plaintiffs' claim is really one for overcharge sounds in the second element of conversion, whether the disposition of property was inconsistent with the property holder's property rights, rather than whether a cognizable property interest exists.

Transamerica next contends that plaintiffs cannot sufficiently establish a property interest in the funds because plaintiffs "must show that [they are] *entitled to immediate possession at the time of conversion.*" Reply at 12 (emphasis in original) (citing Bastanchury v. Times-Mirror Co., 68 Cal. App. 2d 217, 236 (1945)). To maintain an action for conversion, a "plaintiff must prove ownership with the right of possession, or actual possession at the time of the alleged conversion." McCoy v. Nw. Cas. & Sur. Co., 3 Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

App. 2d 534, 537 (1935). Accordingly, "[a]s a general rule, the mere ownership of property, if not coupled with possession or a right to immediate possession, is not a sufficient basis to maintain an action for conversion." Michael Paul Thomas, et al., Cal. Civ. Prac. Torts, § 15:3 (November 2019 Update).

For example, in Jefferson v. Chase Home Fin. LLC, the court held that a borrower had failed to state a claim for conversion against a bank. No. C06-6510-TEH, 2007 WL 1302984, at *1 (N.D. Cal. May 3, 2007). There, the borrower alleged that, as a condition of providing a mortgage loan to the borrower, the bank required the borrower to make minimum monthly payments. Id. The terms of the borrower's mortgage loan allowed the borrower to make additional payments against the loan's principal balance—in turn, the bank was to calculate interest due on the loan based on the balance. Id. The borrower alleged, however, that rather than promptly applying these additional payments toward the balance of the loan such that the interest due would be calculated on a lesser amount, the bank instead placed the borrower's additional payments "into a 'suspense account' until *after* [the bank] calculates the interest due on the note for the following month." Id. (emphasis in original). In determining that the borrower had failed to state a claim for conversion, the court noted that the borrower "fails to allege that he had any ownership rights to the funds at issue once he transmitted those funds to [the bank] as payments on his mortgage" and that "[i]t does not appear, for instance, that [the borrower] could at any point have demanded that [the bank] return his prepayments to him[.]" Id. at *5.

Here, the SAC alleges that "the Accumulation Value is . . . paid out only upon the death of insured, and a *policyholder cannot withdraw the Accumulation Value*, except by terminating the policy or reducing the death benefit by the same amount."[4] SAC ¶ 8 (emphasis added). Accordingly, the Court concludes that plaintiffs have not adequately alleged a "right to immediate possession" of the funds that form the basis for plaintiffs' conversion claim.[5]

---

[4] Transamerica acknowledges that plaintiffs' policies "do provide that a policyholder can potentially access some (not all) of the cash value through loans and partial surrenders subject to strict limitations[.]" Mot. at 12 n.6.

[5] Because plaintiffs fail to sufficiently allege a right to immediate possession, the Court does not reach the question of whether plaintiffs have satisfied the separate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | CIVIL MINUTES – GENERAL | | 'O' |
| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### 2. Disposition of Property

Transamerica next contends that plaintiffs cannot maintain a conversion claim because plaintiffs "fail to allege a disposition of their property in a manner inconsistent with their property rights." Mot. at 12. That is because, according to Transamerica, the MDRs "were authorized" and because "[i]f the Monthly Deductions were too high as [p]laintiffs allege, they can sue for that overcharge as a breach of contract, but it is not conversion of [p]laintiffs' personal property." Id. The Court does not find Transamerica's argument availing.

In State Farm, the court expressly rejected this argument. 2019 WL 3891149, at *4. There, State Farm similarly argued that the consumers' claims "amount[] to an overcharge . . . because 'State Farm was authorized to take monthly deductions from [consumers'] account[s],' and [consumers] . . . only object[] to the amount of the deduction." Id. The court concluded that whether the policies permitted the deductions, alleged to have been made based on factors other than those enumerated in the policies, "is precisely the dispute" because, on the one hand, "State Farm argues that 'all of State Farm's deductions were authorized by the contract,'" while consumers "argue[] that the deductions were *not* authorized by the contract." Id. (emphasis in original) (internal citations and punctuation omitted). The court determined that "an unauthorized transfer of funds is sufficient to constitute disposal of a plaintiff's funds in a manner inconsistent with the plaintiff's rights." Id. (citing ESG Capital Partners, 828 F.3d at 1038).

The Court finds the reasoning in State Farm persuasive. Here, too, plaintiffs and Transamerica similarly dispute whether Transamerica's deductions were authorized. See Mot. at 12; Opp. at 18–19. This dispute forms the basis for plaintiffs' allegations that Transamerica "increase[ed] Monthly Deduction Rates and ma[de] Monthly Deductions in unauthorized amounts from the Accumulation Values" and that "[a]t no time did [p]laintiffs' consent to such wrongful deduction and retention of funds by Transamerica." SAC ¶¶ 103–04. That is sufficient, at the pleading stage, to satisfy the disposition of property element for conversion. See ESG Capital Partners, 828 F.3d at 1038 (finding that, on a motion to dismiss, investor had stated conversion claim where investor alleged that its "attorney . . . placed its funds into an unauthorized trust account and issued checks . . .

---

requirement, which applies in cases involving conversion of money, that "a specific sum capable of identification is involved." Voris, 7 Cal. 5th at 1151.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-04210-CAS(GJSx) | Date | November 4, 2019 |
| Title | BRIGHTON TRUSTEES, ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

using those funds . . . without permission" because "an unauthorized transfer of funds is sufficient to constitute disposal of a plaintiff's funds in a manner inconsistent with the plaintiff's rights."). Accordingly, plaintiffs satisfy the disposition of property element.

### 3. Resulting Damages

Plaintiffs allege that "Transamerica intended to cause damage to [plaintiffs] by increasing Monthly Deduction Rates and deducting more from [the policies'] Accumulation Values than was authorized[.]" SAC ¶ 106. As a result, plaintiffs contend that they have suffered damages "in an amount to be proven at trial, but in any event that exceeds $75,000, exclusive of interest." Id. ¶ 107. Plaintiffs' alleged damages, the difference between what Transamerica deducted from plaintiffs' accumulation values and what the policies authorized, are sufficient at this juncture. See Cal. Civ. Code § 3336 ("The detriment caused by the wrongful conversion of personal property is presumed to be . . . [t]he value of the property at the time of the conversion . . . or . . . an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of[.]").

## IV. CONCLUSION

The Court **DISMISSES** plaintiffs' breach of contract claim, as alleged in ¶ 84(b) of the SAC, **with prejudice**. The Court also **DISMISSES** plaintiffs' claim for tortious breach of the implied covenant of good faith and fair dealing **with prejudice.** The Court **DISMISSES** plaintiffs' conversion claim **without prejudice**. Plaintiffs shall file a third amended complaint within **thirty (30) days.**

IT IS SO ORDERED.

| | 00 | 20 |
|---|---|---|
| Initials of Preparer | | CMJ |